## Sutton v. Moore et al.

January 25, 1949.

Rehearing denied February 25, 1949.

C. E. Rankin and G. C. Walker for appellant.

Delbert Eagle for appellee.

OPINION OF THE COURT BY JUDGE HELM—Reversing.

This is an appeal from a judgment dismissing appellant's petition as amended, after a demurrer had been sustained thereto and appellant had declined to plead further.

The Union Central Life Insurance Company issued two policies of insurance, numbered 804564 and 936739, to John William Moore. The policies were in the usual form, with right to change the beneficiary. By certificates of June 17, 1935, the insured changed the beneficiary under each policy as follows:

"The net sum payable under the said policy in the event of my death shall be paid to Estelle Moore Sutton, my daughter, William Price Moore and John Wesley Moore, my sons, share and share alike, or to the survivors or survivor if living at my death, otherwise to my administrators, executors or assigns."

Estelle Moore Sutton died June 14, 1946, survived by an infant daughter, the appellant, Elizabeth Gene Sutton, her only heir at law. The insured, John William Moore, died April 25, 1947, survived by his two sons, the appellees, William Price Moore and John Wesley Moore, and his granddaughter, the appellant, Elizabeth Gene Sutton.

At the time of the death of John William Moore, the policies were held by the insurance company to secure a small loan. The parties to this action did not know the beneficiaries designated in the policies until appellant, by her guardian, H. Clay Sutton, and appellees had filed notice of death and application for payment with the insurance company on May 29, 1947.

On June 18, 1947, the insurance company advised the appellee John W. Moore as follows:

"* * * under policies #804564 and #936739 according to the contract the proceeds were payable to Estelle Moore Sutton, daughter, William Price Moore and John Wesley Moore, sons, share and share alike, or to the survivors or survivor. The affidavit which you submitted indicates that your sister died on June 14, 1946, and accordingly she predeceased your father.

"Therefore, the entire proceeds of the policies #804564 and #936739 became payable equally to you and your brother. Under the circumstances the heirs of your sister would not have any claim under these policies. Since H. Clay Sutton has made claim for part of the proceeds of these two policies as guardian of Elizabeth Gene Sutton, it will be necessary that H. Clay Sutton withdraw his claim."

On June 20, 1947, H. Clay Sutton advised the insurance company as follows:

"Lancaster, Kentucky
"June 20, 1947
"Re: Policy #804564 and 936739

"Mr. R. A. Dowell, Treas.
"Union Central Life Ins. Co.
"Louisville, Ky.

"Dear Mr. Dowell:

"This is to certify that I signed a claim by error in

settlement of the above numbered policies as guardian for Elizabeth Gene Sutton, and the amount of said policies be paid to as per your letter of June 19th, to William Price Moore, and John Wesley Moore.

"(s) H. Clay Sutton."

At the same time, appellees prepared, signed and delivered to appellant's guardian a writing as follows:

"Lancaster, Kentucky
"June 20, 1947
"Policies #804564—936739

"We the undersigned William Price Moore and John Wesley Moore in order to clear up a technical error in the above numbered policies so that our sister, Estelle Moore Sutton deceased that her daughter Elizabeth Gene Sutton shall share and share alike with us do hereby pledge ourselves to see that she share, and share alike with us, when we have received amount due on said policies by us.

"(s) William Price Moore
"John Wesley Moore"

Appellees received $6,255.77, the net value of the two policies. Appellant made demand on them for $2,085.25, one-third of the net amount received by them. Appellees declined to honor their "pledge" of June 20, 1947.

This action was filed. The petition, with exhibits, set out the facts as above summarized. Appellees demurred to plaintiff's petition. Appellant filed an amended petition, alleging that:

"When the defendants produced the letter referred to and copied in the petition, he demanded of them that they produce the policy so that he could see it, have it examined by his attorney and be advised as to its contents and meaning. He further claimed to the defendants at the time that if the policy was worded as to the designation of the beneficiaries, as stated in said letter, then that it was so done through mistake on the part of the assured, and that the assured, grandfather of his ward, never knew or intended that it was so worded as to exclude his ward, and because of such facts that the designation was not binding on his ward.

"To this the defendants responded that it was unnecessary for him to see the policy or to advise with his attorney as to the contents, meaning or intention of the policy or of the assured, because they wanted to collect the proceeds of the policy without further steps or proceedings, and that if the plaintiff would write to the insurance company withdrawing his claim and demand for one-third of the insurance, that the defendants would collect the whole of it and pay one-third over to the plaintiff as guardian for the infant.

"The claim of the plaintiff to one-third of the insurance proceeds was made in good faith and in the belief that the infant was entitled thereto, as above set out. The defendants claimed that the infant was not entitled to any of the insurance but in order to collect the same without further proof of loss or proceedings they made the agreement that if plaintiff would write the letter referred to the insurance company, they would collect the insurance and divide it with the infant. In this way the dispute over said insurance was settled. The plaintiff wrote the letter withdrawing his claim in consideration of the promise and contract of the defendants to pay him one-third of the insurance money."

The question is, did the petition as amended state a cause of action? We think it did. In 15 C. J. S., Compromise and Settlement, sec. 11, p. 730, 732, it is said:

"It is difficult to determine at just what point a claim is transformed from a baseless to a doubtful one, and each case must be measured by its own peculiar facts. It is clear, however, that the claim need not be valid in the sense that claimant be able to recover on it, and it is not material that one party may ultimately be unable to maintain his position, that the other party may have a good defense, that a subsequent judicial decision may show the rights of the parties to have been different from what they at the time supposed, or that one of the parties may afterward find out that he might have obtained a judgment more favorable to him by trying out the claim on its merits. In other words, it is not necessary, to sustain a compromise of a doubtful right, that the parties shall have settled the controversy as the law would have done. It is immaterial on which side the right ultimately proves to be, and the compro-

mise may be sustained, although it afterward develops that the right is on the other side, nor will the courts inquire as to which party had the better right, since the very object of the compromise is to avoid the risk or trouble of that question. Moreover, to require a party to establish his original right would tend to prevent all compromises and render such contracts useless.''

In Forsythe v. Rexroat, 234 Ky. 173, 27 S. W. 2d 695, 697, it is said:

''It is well-known law that forbearance to sue is a sufficient consideration to support a promise. But, as is equally well established, the suit forborne must not be wholly and certainly groundless or unsustainable at law or in equity. * * * It is not essential, however, that the validity or basis of the claim giving rise to such promise should be certain and sure. If it be doubtful, and asserted in good faith, that is sufficient. * * *

''It has been said that courts delight to enforce compromise agreements. It is the duty of courts to encourage rather than discourage parties in resorting to a compromise as a mode of adjusting conflicting claims, and the nature or extent of the rights of each party should not be nicely scrutinized. So far as it can be done legally and properly, the courts should support such agreements having for their object an amicable settlement of doubtful rights. Litigation is always burdensome, and the courts everywhere look favorably upon the settlement of cases out of court.''

In Nuckols v. Nuckols, 293 Ky. 603, 169 S. W. 2d 828, 829, it is said:

''It is well settled in this jurisdiction that an agreement of compromise is supported by sufficient consideration where it is in settlement of a claim which is unliquidated, or in the settlement of a claim in dispute, or one which is in doubt.''

The judgment is reversed with directions to set it aside and to overrule the demurrer to the petition as amended.

Judges Thomas and Rees dissenting.